DECISION AND JOURNAL ENTRY
{¶ 1} Appellants, Harold Hopkins, et al., appeal from the judgment of the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} Appellants are individuals and investing firms involved in the sale of securities. Harold Hopkins is a licensed Ohio insurance agent and a licensed securities salesperson. He owns or controls the brokerage firms and investment agencies named in the complaint, namely *Page 2 
Vista Financial Services (an Ohio securities brokerage/dealership) and Vista Financial Group (an Ohio insurance agency) (hereinafter collectively "Vista"); and Horizon Benefit Administration and Flagship Administration (both Ohio investment advisory firms) (hereinafter collectively "Flagship"). Linda Hopkins and Steven Hopkins are Harold Hopkins' wife and son, respectively. Appellees, Esther Duncan, et al. (hereinafter "the Duncan Appellees"), claim that all three individuals exercised control over the above-named firms and are responsible for the fraudulent conduct that allegedly occurred.
 {¶ 3} The Duncan Appellees are individual investors who were allegedly defrauded by Appellants. Each Duncan Appellee engaged Harold Hopkins and his companies as investment advisors, and were encouraged to purchase stock in Vista or Flagship or both.
 {¶ 4} Appellee, The Cincinnati Insurance Company ("Cincinnati Insurance"), provided Appellants with "wrongful acts" insurance coverage in their capacities as "directors and officers" of Vista and Flagship. Cincinnati Insurance issued to Vista and Flagship a policy covering the period of August 25, 2004 through August 25, 2005 (hereinafter "the Policy").
 {¶ 5} Appellants sought coverage and defense under the Policy for a lawsuit that was filed against them by the Duncan Appellees ("the Duncan Litigation") for alleged negligence and misconduct related to investments made by the Duncan Appellees. Harold Hopkins also sought defense under the Policy for two other lawsuits: a complaint that was filed against him and others by Jeannette C. Bradley, Director of the Ohio Department of Commerce (hereinafter "the ODC Litigation") and a criminal action that was filed against him.
 {¶ 6} On April 16, 2007, Cincinnati Insurance filed a declaratory judgment action seeking rescission of the Policy and finding that Cincinnati Insurance owed no duty to defend or indemnify the Duncan Litigation, the ODC Litigation and the criminal action. See Case *Page 3 
No. 2007-04-2874. The Duncan Appellees filed a motion for leave to intervene in the declaratory judgment action. Accordingly, they filed an intervenor complaint for declaratory judgment against Cincinnati Insurance, alleging that they were third party beneficiaries of the Policy and seeking recovery directly from Cincinnati Insurance under the Policy. In response, Cincinnati Insurance denied the Duncan Appellees' complaint and asserted an affirmative defense for rescission of the Policy. The declaratory judgment action was consolidated with the present case (i.e. the Duncan Litigation).
 {¶ 7} The Duncan Appellees and Cincinnati Insurance agreed to settle the intervenor complaint without any admission of liability by either party. The Duncan Appellees also agreed to fully release all defendants in the intervenor complaint from liability and to dismiss their claims against Harold and Linda Hopkins and the other Duncan Litigation defendants with prejudice.
 {¶ 8} On November 28, 2007, Cincinnati Insurance filed a motion seeking a ruling from the court that the settlement between Cincinnati Insurance and the Duncan Appellees in case number CV-2005-01-0554, will not affect Cincinnati Insurance's ability to dispute insurance coverage pursuant to the Policy at issue in the within matter. On December 11, 2007, Appellants filed an objection to Cincinnati Insurance's motion for an order regarding settlement. Appellants opposed the motion, arguing that Cincinnati Insurance could not enter into a settlement agreement without their consent and that settlement would adversely affect them.
 {¶ 9} On December 31, 2007, the trial court entered an order granting Cincinnati Insurance's motion for entry of an order regarding settlement. In addition, the trial court dismissed with prejudice both the intervenor complaint for declaratory judgment filed by the Duncan Appellees and the Duncan Litigation. The trial court also ruled that the settlement *Page 4 
between Cincinnati Insurance and the Duncan Appellees would not negatively affect Appellants' claims against Cincinnati Insurance. The trial court explained that because the proposed settlement resolved claims that the Duncan Appellees asserted against Cincinnati Insurance, it was unnecessary for Cincinnati Insurance to obtain Appellants' consent for the settlement.
 {¶ 10} The trial court stated that the claims regarding Cincinnati Insurance's coverage remained pending. In addition, the trial court held that the settlement did not affect Cincinnati Insurance's right to rescind the Policy and dispute coverage for claims other than those of the Duncan Appellees.
 {¶ 11} Appellants timely appealed the trial court's order, raising one assignment of error for our review. Steven Hopkins did not file a brief in this appeal and has not opposed the entry of the December 31, 2007 settlement agreement.
 II. ASSIGNMENT OF ERROR
 "THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING [THE DUNCAN APPELLEES'] MOTION FOR A PARTIAL SETTLEMENT AGREEMENT."
 {¶ 12} In their sole assignment of error, Appellants assert that the trial court committed reversible error in granting the Duncan Appellees' motion for a partial settlement agreement. We disagree.
 {¶ 13} At the outset, we note that Appellants have given us two standards of review. While Appellants first state that our standard of review is abuse of discretion, Appellants then state that the review of a trial court's settlement agreement may present mixed questions of law and fact. Because Appellants are challenging the trial court's approval of the settlement agreement, the appropriate standard of review is abuse of discretion. *Page 5 
 {¶ 14} "The approval of a settlement agreement rests in the sound discretion of the trial court." State ex rel. Republic Servs. of Ohio v.Pike Twp. Bd. of Trustees, 5th Dist. Nos. 2006 CA 00153, 2006 CA 00172,2007-Ohio-2086, at ¶ 68; Meyer v. Meyer, 9th Dist. No. 21023, 2002-Ohio-5038, at ¶ 9; see Giancola v. State (Mar. 28. 1985), 10th Dist. No. 84AP-899, at *6. In order to find an abuse of that discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 15} "[A] settlement agreement is a contract designed to terminate a claim by preventing or ending litigation." Catanzaro Sons Daughters,Inc. v. Trio Food Distribs., Inc. (Apr. 27, 2001), 1st Dist. No. C-000584, at *2. See, also, In re All Kelley Ferraro AsbestosCases, 104 Ohio St.3d 605, 2004-Ohio-7104, at ¶ 28; Davis v.Jackson, 159 Ohio App.3d 346, 2004-Ohio-6735, at ¶ 14. When parties have agreed to the terms of a settlement, a trial court may sign a journal entry reflecting the terms and may enforce the agreement. Brilla v.Mulhearn, 168 Ohio App.3d 223, 2006-Ohio-3816, at ¶ 20.
 {¶ 16} We also note that Appellants have failed to support any of their arguments with citations to authority, as required under App. R. 16(A)(7), which provides:
"The appellant shall include in its brief * * *
"An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."
 {¶ 17} Moreover, Appellants' brief in no way comports with the local rules. Loc. R. 7(B)(7) requires that an appellant's brief include the following: "Argument and law. The argument shall contain the contentions of the appellant with respect to the assignments of error and the supporting reasons with citations to the authorities and statutes on which the appellant *Page 6 
relies." This Court has previously held that a defendant has the burden of affirmatively demonstrating the error of the trial court on appeal. State v. Cook, 9th Dist. No. 20675, 2002-Ohio-2646, at¶ 27. "Moreover, `[i]f an argument exists that can support this assignment of error, it is not this court's duty to root it out.'" Id., quoting Cardone v. Cardone (May 6, 1998), 9th Dist. Nos. 18349 and 18673, at *18. See, also, State v. Patton, 9th Dist. No. 02CA0113-M, 2003-Ohio-4030, at ¶ 15. Even if Appellants had complied with the appellate and local rules, their arguments still fail.
 {¶ 18} Appellants first contend that the trial court erred in approving the partial settlement agreement without holding an evidentiary hearing and/or without conducting proper discovery to determine the facts. We find no merit in this argument.
 {¶ 19} A trial court may enforce an oral settlement as long as the terms of the agreement are established by clear and convincing evidence.Brilla, supra, at ¶ 20. When the existence of a settlement is disputed, a trial court must conduct an evidentiary hearing before entering judgment. Rulli v. Fan Co. (1997), 79 Ohio St.3d 374, syllabus. The Ohio Supreme Court has further held that
 "in the absence of allegations of fraud, duress, undue influence, or of any factual dispute concerning the existence or the terms of a settlement agreement, a court is not bound to conduct an evidentiary hearing prior to signing a journal entry reflecting the settlement agreement." Mack v. Polson Rubber Co. (1984), 14 Ohio St.3d 34, 37.
 {¶ 20} Here, the existence of the settlement is not disputed. Further, Appellants are not alleging fraud, duress, undue influence, or any factual dispute concerning the existence of the terms of the settlement agreement. Accordingly, the trial court had no obligation to conduct an evidentiary hearing. Rulli, 79 Ohio St.3d at syllabus, Mack,14 Ohio St.3d at 37. Furthermore, the record reflects that Appellants requested neither an evidentiary hearing nor discovery to *Page 7 
determine whether the settlement was appropriate. Although Harold and Linda Hopkins filed a written objection to the settlement motion, they did not make any request in the motion that the trial court conduct an evidentiary hearing on the motion nor did they challenge the lack of discovery. We have repeatedly held that "[a] reviewing court will not consider as error any issue that a party was aware of but failed to bring to the trial court's attention." Kader v. Nixon (Oct. 11, 2000), 9th Dist. No. 99CA007307, at *3, citing Schade v. Carnegie Body Co.
(1982), 70 Ohio St.2d 207, 210. Further, "[a] party waives the right to contest an issue on appeal if that issue was in existence prior to or at the time of trial and the party did not raise it at the appropriate time in the court below." Kader, supra, *3, citing Stores Realty Co. v.Cleveland (1975), 41 Ohio St.2d 41, 43. Accordingly, we find that Appellants have forfeited this issue on appeal.
 {¶ 21} Appellants also contend that the trial court's approval of the partial settlement agreement over their objection violated the Policy provision which required their approval before Cincinnati Insurance could settle any claim. We similarly find no merit in this contention.
 {¶ 22} Part V, Section IV, Part B of the Policy states:
 "We may make any investigation we deem necessary and may, with the consent of the `policy insureds' named in connection with the `claim', make any settlement of any `claim' we deem expedient. If the `policy insureds' withhold consent to such settlement, our liability for all `loss' in connection with such `claim' shall not exceed the amount for which we could have settled such `claim' plus `defense costs' which have accrued up to the date such settlement was proposed in writing by us to the `policy insureds' subject to the provisions concerning Limits of Insurance, Multiple Claims and Deductibles of this policy."
This clause concerns the settlement of a "claim". In Part I, Section IV, A, "claim" is defined as "any proceeding initiated against any of the `insureds' before any governmental body which is legally authorized to render an enforceable judgment or order for money damages or other relief, including any appeal from such proceeding." *Page 8 
 {¶ 23} As a general rule, insurance policies must be examined in their entirety. See Zanco v. Michigan Mut. Ins. Co. (1984), 11 Ohio St.3d 114,115-116. Accordingly, a proper reading of an insurance policy generally cannot be accomplished by relying on one provision to the exclusion of others. Natl. Union Fire Ins. Co. of Pittsburgh, Pa. v. Shane ShaneCo., L.P.A. (1992), 78 Ohio App.3d 765, 769. See, also, Wurth v. IdealMut. Ins. Co. (1987), 34 Ohio App.3d 325, 329. It is well settled that where the terms in an insurance policy are clear and unambiguous, those terms must be applied to the facts without engaging in any construction.Santana v. Auto Owners Ins. Co. (1993), 91 Ohio App.3d 490, 494.
 {¶ 24} The terms of the Policy clearly state that Cincinnati Insurance had to obtain its insured's consent before settling proceedings initiated against the insureds. The consent provision did not require that Cincinnati Insurance obtain its insured's consent before settling suits filed directly against Cincinnati Insurance. Here, the settlement agreement resolved claims the Duncan Appellees asserted directly against Cincinnati Insurance. Appellants have failed to demonstrate that they were parties to the partial settlement agreement and that Cincinnati Insurance had to, therefore, obtain their consent to the settlement agreement.
 {¶ 25} Lastly, Appellants assert that the trial court's approval of the partial settlement agreement violated the criminal court order against Harold Hopkins. Appellants allege that "for the sake of the investors and in honor of his probation obligations" Harold Hopkins "was specifically ordered not to settle for any settlement offer other than the maximum recovery available under the subject policy."
 {¶ 26} Our review of the trial court's order reflects that, contrary to Appellants' assertions on appeal, Hopkins was not "specifically ordered not to settle for any settlement offer *Page 9 
other than the maximum recovery available under the subject policy." Rather, the court ordered Hopkins to
 "make full and complete restitution in regular, weekly payments on any unclaimed funds, in his name, or the company name, as well as, any insurance proceeds and any bond money, that shall be collected through the Adult Probation Department for distribution to victims, to bear interest at the prevailing statutory rate."
 {¶ 27} At most, this provision might require Hopkins to turn over insurance proceeds he personally receives. The settlement agreement at issue herein does not concern insurance proceeds that Harold Hopkins would receive. Neither Cincinnati Insurance nor the Duncan Appellees were parties to the criminal action. Consequently, no order issued in the criminal action can bind Cincinnati Insurance and the Duncan Appellees.
 {¶ 28} The Ohio Supreme Court has held that "`[t]he law favors the resolution of controversies and uncertainties through compromise and settlement rather than through litigation.'" Spercel v. SterlingIndustries, Inc. (1972), 31 Ohio St.2d 36, 38, quoting 15 American Jurisprudence 2d 938, Compromise and Settlement, Section 4. The Court further explained that "`[t]he resolution of controversies * * * by means of compromise and settlement * * * results in a saving of time for the parties, the lawyers, and the courts, and it is thus advantageous to judicial administration, and, in turn, to government as a whole.'" Id.
 {¶ 29} Upon review of Appellants' arguments and in light of public policy favoring resolution of disputes through settlement, we find no abuse of discretion in the trial court's approval of the settlement agreement.
 {¶ 30} Appellants' assignment of error is overruled. *Page 10 
 III. {¶ 31} Appellants' assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellants.
 SLABY, J. WHITMORE, J. CONCUR *Page 1